5 How. 135–*Contra,* 4 How. 240.

## SUPREME COURT.

### HARTMAN AND OTHERS agt. SPENCER.

A motion to change the place of trial can not be made *before* the issues in the cause are settled (SELDEN, Justice).

Where a defendant moved to change the place of trial for the reason that a large number of witnesses residing in the proposed county were required to prove a breach of the covenant of quiet possession set up in the answer; but no eviction being averred by the defendant; and it appearing moreover that he never had possession of the premises at all. *Held,* that under such circumstances the covenantor could not be made liable (5 *Hill,* 599). Motion denied.

*Seneca Special Term, October* 1850. This is a motion on the part of the defendant to change the place of trial of this action from the county of Livingston to the county of Tompkins, on the ground that a great number of witnesses, material and necessary to sustain the defence, reside in Tompkins and the adjoining counties.

It was conceded upon the argument that the pleadings had not terminated, and that issue was not then joined in the cause; and the motion was opposed upon this ground, as well as upon the merits.

SELDEN, Justice.—Whether a motion to change the place of trial can be made before the issues in the cause are settled, is a question of much practical importance, and one upon which the decisions are conflicting.

It has recently received an elaborate examination by Justices WILLARD of the fourth, and SILL of the eighth district, who have come to opposite conclusions: the former having held in the case of Schenck vs. McKie, (4 *How. Pr. R.* 246), that the settled

practice prior to the Code, which required motions to change the venue to be made before issue, was equally applicable to motions under the Code to change the place of trial; and the latter having decided at a general term, with the concurrence of his three associates in the eighth district, that the motion must under the provisions of the Code, be postponed until the issues are joined (Mixen vs. Kuhn, 4 *How.* 409).

This last case being the most recent, as well as the only one reported in which the question has been passed upon at a general term, I should for these reasons alone, be disposed to follow it. But the conflicting views entertained upon the question, and the fact that the practice is still unsettled, and differs in different districts, have induced me to look into the subject with some care for the purpose of satisfying my own mind as to its real merits; and while from this examination I am led to concur in the reasoning of Mr. Justice SILL, I also think that another line of argument may be pursued, which will serve to make the accuracy of his conclusion still more clear.

By the common law and the practice of the English courts there were two distinct and separate modes of obtaining a trial in a different county from that in which the venue was first laid. In transitory actions it might be accomplished by changing the venue, on motion, to the county in which a trial was desired; thus incidentally controlling the place of trial through the operation of the rule which required the venue to be issued, to the county where the venue was laid.

This practice was first introduced by the judges as a substitute for that of a traverse of the venue to be tried by a jury, in order to avoid the inconvenience and delay of the latter mode; and applied originally only to actions which were local, or which, although transitory by the common law, had been rendered quasi local by certain old English statutes.

It began, however, at an early day to be used for the purpose of securing a trial in actions purely transitory, in the county where the witnesses principally resided (Foster vs. Taylor, 1 *Term R.* 776; Watt vs. Daniel, 1 *Bos. & Pul.* 425).

Hartman and others agt. Spencer.

But in actions which were local the venue, if *laid in the proper county*, could not be changed   If, therefore, in such an action, it became necessary for any reason, as to obtain an impartial trial, that the place of trial should be changed, it was accomplished in a different mode; to wit, by a suggestion upon the record that a fair and impartial trial could not be had in the county where the venue was laid, with a *nient dedire*, as it was called; that is an order *by default* or *nil dicit*, that the venue issue to an adjoining county.

From the form of this entry it is obvious that it was first adopted in cases where it appeared from the record itself, either that justice required the place of trial to be changed, or where all the jurors within the *visue*, were interested, or that the venire must necessarily be awarded to another county, as where the venue was laid in Wales, to which the venire did not run.

But the same form was afterwards used where it was shown by evidence *dehors* the record, that it was necessary to send the case to another county in order to secure an impartial trial. The practice in such case was, on presenting the facts by affidavit to the court to obtain a rule to show cause why the party should not be at liberty to enter the usual suggestion with a *nient dedire*, upon the roll; and if sufficient cause was not shown the rule was made absolute and the suggestion entered (Rex vs. Harris 3. *Burr.* 1330).

These two modes of changing the place of trial were entirely distinct from each other. Lord Mansfield, in the case last cited, says:

" No two things can be more difficult than *changing* the venue and continuing it as it was, with such a suggestion upon the roll as is now proposed."

The latter mode was applicable to actions whether transitory or local; while the former could only be used in those which were transitory; except where in a local action the venue was aid in a wrong county.

Motions to change the venue might always have been made before issue joined: and ultimately this came to be required, for

the purpose of avoiding delay; but a suggestion upon the roll by which the trial was transferred to a county other than that where the venue was laid, could not be entered until the pleadings were closed.

This suggestion embraced an award of the venire, which could not be made until the cause was in readiness for trial.

With this brief review of the practice of the English courts transplanted into and adopted by our own, we are prepared fully to comprehend the various provisions of the Revised Statutes (2 *R. S.* 409, §2), on the subject of venues.

The first and second subdivisions of this section simply declare what actions shall be local. The third subdivision, which provides for the trial of transitory actions, in the first place expressly enacts the rule of the common law, requiring causes to be tried in the county where the venue is laid; and then it authorizes the court, when necessary for the convenience of parties or witnesses or for the purposes of a fair and impartial trial, *to order the issues* to be tried in some other county.

This provision, it will be seen, did not contemplate any change of venue; that was to remain as before. It did not confer any new power upon the court; certainly so far as the object of securing a fair and impartial trial was concerned; but it contemplated an application of this mode of changing the place of trial, by direct order instead of incidentally through a change of venue, to cases in which it had not in practice been, at least extensively used; that is, where the object was to promote the convenience of witnesses.

The last clause of the section then gives to the court the power to change the venue in all cases, whether local or transitory for the purpose of securing an impartial trial. Now this clause introduced a substantial change into the law. As we have before seen, if in a local action it became necessary prior to this statute, to change the place of trial for the purposes of impartial justice, it could only be done by an entry upon the record; but this clause puts such actions upon the same footing with those which are transitory.

The effect of these provisions, taken together was, to break up the distinctions which previously existed, in practice, between transitory and local actions in regard to the *mode* of obtaining a change in the place where they were to be tried.

It is obvious, I think, that the provision for effecting the desired change by direct order, without a change of venue, was in substance a statutory adoption of the English practice before referred to. This order under our statute could not properly be made until the issues were joined, for several reasons:

1. Because the language of the act seems to imply this, "to order such issues to be tried," &c. By referring back to the commencement of the section we see that the words "such issues" mean "issues of fact joined." How can the court order an issue joined, to be tried, until it is actually joined; especially as until the issue is joined, it is impossible to know whether the pleadings will terminate is an issue of fact or of law.

2. As this mode of changing the place of trial is a mere substitute for that, or rather is in substance the same as that of the English courts by suggestion upon the record, with an award of the venire to another county, it would seem that the practice in regard to the latter should regulate the proceeding.

3. The order to change the place of trial must of necessity go into the record; that is, as the practice stood at the time the statute was passed; because otherwise it would have appeared upon the face of the record itself, that the trial was in the wrong county. How then would a record have looked with such an order intermediate the declaration and plea, or the plea and replication? Certainly, to a correct practitioner in the courts of that day, somewhat incongruous.

I think it clear, therefore, that under this provision of the Revised Statutes, or under the practice as it stood prior to that enactment, a direct order to change the place of trial of an issue of fact, could only with propriety be obtained until an issue of fact was joined.

We come, then, to the consideration of the judiciary act of 1847. Section 48 of this act provides that all issues of fact *pending*

in the Supreme Court, or any Court of Common Pleas, when the act took effect, should be tried in the county where the venue should be laid; and section 49 authorizes the Supreme Court to order any issue of fact joined in any suit or proceeding, either at law or in equity, whether joined in the Supreme Court or any County Court, or other court, to be tried in any other county.

These two sections taken together, are a little equivocal, because there is nothing to which the words " any other county," in section 49 can refer, except the latter part of section 48.

But it is clear that the provision in section 49 is not limited to the cases provided for in section 48, because it embraces issues in *equity* as well as the new County Courts, which were not within the provisions of section 48.

This section, however, to wit, section 49, produced no change whatever in the law. It gave no new power to the court; nor did it take away any which it previously possessed. Neither section 49 nor any other provision of the judiciary act, effected any change in the power or practice of the court in regard to the change of venue. It was a mere reenactment of so much of the Revised Statutes (2 *R. S.* 409, § 2), as authorized a direct order changing the place of trial without a change of venue.

The rules in regard to venues, that is, in regard to the influence of the venue upon the place of trial, remained untouched by this act. Even section 46, which was almost immediately repealed, recognized the controlling influence of the venue in this respect.

I deem it clear, therefore, that the practice of regulating the place of trial incidentally through a change of venue, continued in full force under the judiciary act.

No change whatever having been wrought by this act upon the subject we are considering, it follows that an order under section 49 of the act for the trial of an issue of fact in a county other than that where the venue was laid, could only be obtained after issue joined, for the reasons already given; which are just as applicable to a proceeding under this provision, as under that of the Revised Statutes before referred to.

Hartman and others agt. Spencer.

It only remains for us to consider the effect of the enactments of the Code upon this question.

Sections 123, 124 and 125 taken together make all actions local, except where all the parties reside out of the state; and they declare in what counties all actions shall be tried, subject however "to the power of the court to change the place of trial in the cases provided by statute."

Now there is nothing in either of these sections to interfere with the practice of the court in regard to the change of venues. The whole statutory power of the court over the place of trial is expressly reserved; and that power might be exercised for aught which these sections contain, in the same way, and in every way in which it had been before exerted.

But other provisions of the Code by which the venue itself is virtually abolished, have destroyed one means by which the court exercised its control over the place of trial. This power of the court being a mere incident of the relation between the venue and the place of trial, must necessarily fall with that upon which it was based. The whole practice of changing venues is swept away; not a vestige of it remains.

What power of the court then is reserved by the sections of the Code referred to? It can only be that power given or confirmed by the Revised Statutes, and reiterated by section 49 of the judiciary act, to order "issues of fact joined" to be tried in any county for the purposes of convenience or justice; and I have, I think, conclusively shown that that power could only be exercised after the issues were in fact joined.

In addition to and in confirmation of this view of the question, may be urged with great force, the reasons given by Mr. Justice SILL, in Mixer vs. Kuhn, showing the strong propriety of requiring the issue to be first joined.

But independently of this preliminary objection, I think the motion must fail upon the merits, inasmuch as a large number of the witnesses sworn to on the part of the defendant, are required to prove a breach of the covenant of quiet possession set up in the answer.

No eviction is averred by the defendant; and it appears moreover that he never had possession of the premises at all. The case of St. John vs. Palmer (5 *Hill,* 599), is conclusive to show that under such circumstances the covenantor can not be made liable.

The motion must be denied; but in consequence of the unsettled state of the practice, no costs are allowed.